UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| YOLANDA ALVA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | No. ED CV 16-253-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## PROCEEDINGS

Plaintiff filed this action on February 10, 2016, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 18, 2016, and April 5, 2016. Pursuant to the Court's Order, the parties filed a Joint Stipulation (alternatively "JS") on October 17, 2016, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Submission under submission without oral argument.

/

## II.

## BACKGROUND

Plaintiff was born on October 30, 1982. [Administrative Record ("AR") at 171, 175.] She has past relevant work experience as a fast-foods worker. [AR at 20, 61.]

On July 9, 2012, plaintiff filed an application for a period of disability and DIB, and on July 25, 2012, she filed an application for SSI payments, alleging in both that she has been unable to work since January 1, 2012. [AR at 10, 171, 175.] After her applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 10, 133-35.] A hearing was held on October 8, 2014, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 27-63.] A vocational expert ("VE") also testified. [AR at 60-63.] On December 12, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability from January 1, 2012, the alleged onset date, through December 12, 2014, the date of the decision. [AR at 10-21.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [AR at 5-6.] When the Appeals Council denied plaintiff's request for review on January 8, 2016 [AR at 1-3], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability

to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2012, the alleged onset date.[1] [AR at 12.] At step two, the ALJ concluded that plaintiff has the severe impairments of major depressive disorder with psychotic features; learning disorder; mood disorder; and borderline intellectual functioning. [AR at 13.] He also found that plaintiff's medically determinable physical impairments of diabetes mellitus, history of intermittent musculoskeletal back pain, and obesity, considered singly and in combination, were nonsevere. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [AR at 14.]

---

[1]   The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016. [AR at 12.]

4

The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> [S]he can understand, remember, and carry out simple job instructions but would be unable to perform work that would require directing others, abstract thought, or planning; and she can maintain attention and concentration to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements.

[AR at 16.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is able to perform her past relevant work as a fast-foods worker. [AR at 20, 61-62.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of January 1, 2012, through December 12, 2014, the date of the decision. [AR at 20.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he: (1) failed to properly consider the consultative examiner's opinion; (2) failed to properly consider the criteria of Listing 12.05C; (3) assessed plaintiff's RFC and posed a hypothetical to the VE based on that RFC; and (4) determined that plaintiff can perform her past relevant work as a fast-foods worker. [JS at 4.] As set forth below,[3] the Court agrees with plaintiff, in part, and remands for further proceedings.

### A.   OPINION OF CONSULTATIVE PSYCHOLOGICAL EXAMINER

#### 1.   Legal Standard

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527. "As a

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] The Court addresses these issues in a slightly different order than presented by plaintiff.

general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing Ryan, 528 F.3d at 1198); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan, 528 F.3d at 1198.

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle, 533 F.3d at 1164 (citation and internal quotation marks omitted); Ryan, 528 F.3d at 1198; Ghanim v. Colvin, 763 F.3d 1154, 1160-61 (9th Cir. 2014); Garrison, 759 F.3d at 1012. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, 157 F.3d at 725. The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); Soc. Sec. Ruling ("SSR")[4] 96-6p; Bray v. Astrue, 554 F.3d 1219, 1221, 1227 (9th Cir. 2009) (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony

---

[4] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

### 2. Dr. Larson's Opinion

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for discounting or rejecting the November 22, 2010, opinions of the consultative psychological examiner, Douglas W. Larson, Ph.D. [JS at 3-5.] Specifically, Dr. Larson found plaintiff "moderately to markedly impaired in the ability to . . . understand, remember, and complete complex commands," and "*markedly* impaired in the ability to maintain persistence and pace in a normal workplace setting."[5] [AR at 281-82 (second emphasis added).] The ALJ gave Dr. Larson's opinions "partial weight,"[6] and stated, in relevant part, the following:

> The undersigned finds that aspects of Dr. Larson's opinion, particularly in the areas of her abilities to remember, understand, or carry out detailed or complex job instructions and to sustain the requisite concentration to perform such tasks, *is supported by the diagnostic tests illustrating [plaintiff's] borderline intellectual functioning and decreased concentration*. Dr. Larson personally administered a series of tests of [plaintiff's] intellectual functioning, and *his opinion is consistent with the findings from such tests*.

[AR at 19 (emphases added).]

The ALJ also gave "great weight" to the opinions of the two State agency psychiatric consultants, "both of whom found that [plaintiff] is able to understand, remember, and carry out *two-step commands involving simple instructions* and to maintain concentration, persistence, and pace for such *for four-hour increments* with customary work breaks." [AR at 19 (emphases added) (citing AR at 73-74, 86-87, 100-01, 112-13).] There is no evidence that these consultants

---

[5] The Administration defines a "marked limitation" as one that "interfere[s] seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1). "Marked" means "more than moderate but less than extreme." Id.

[6] The ALJ gave "little weight" to Dr. Larson's opinion that plaintiff had a moderate impairment in her ability to interact appropriately with supervisors, co-workers or the public, as that opinion was inconsistent with Dr. Larson's own observations of plaintiff's behavior, as well as with plaintiff's own report of only mild limitations in social functioning. [AR at 18-19.]

were provided with, or reviewed, Dr. Larson's report. [See AR at 65-70, 78-80, 93-96, 105-08.] Nevertheless, the ALJ stated that the consultants' assessments "are *consistent with the generalized lack of significant positive findings from Dr. Larson's mental status examination . . .* ." [Id. (emphasis added).]

However, the consultants' opinions regarding plaintiff's ability to maintain concentration, persistence, and pace for four-hour increments, actually appear to be in direct contrast with Dr. Larson's more restricted opinions regarding plaintiff's *marked inability* -- without limitation as to whether the task was simple or complex -- to maintain persistence and pace in a normal workplace setting.[7] [AR at 18.] Moreover, despite the ALJ's finding that Dr. Larson's opinion "in the area[] of [plaintiff's] abilities to . . . sustain the requisite concentration to perform [detailed or complex] tasks," was *supported* by Dr. Larson's diagnostic test results, the ALJ seemingly declined, without explanation, to apply Dr. Larson's finding to plaintiff's ability to understand, remember, and carry out simple commands, and "limited" Dr. Larson's opinion regarding plaintiff's marked impairment in her ability to maintain persistence and pace to *complex* tasks. Dr. Larson, however, did not in any way state that his opinion as to plaintiff's marked limitation in persistence and pace applied only to tasks that were complex. [AR at 280-81.] The ALJ may not substitute his lay opinion (here, in limiting Dr. Larson's opinion in a way not supported by Dr. Larson's diagnostic findings and opinion based on those findings), for that of a professional. See Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ erred in rejecting physicians' opinions and finding greater residual functional capacity based on claimant's testimony that he took a road trip; there was no medical evidence to support the ALJ's determination); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted); Rohan v. Chater, 98 F.3d 966,

---

[7] In his mental status examination, Dr. Larson noted that plaintiff's memory was reduced, as "corroborated by testing results," and that her concentration and attention span were "[v]ariable, [as] corroborated by testing results." [AR at 278.] Based upon all of his test results, Dr. Larson concluded that plaintiff was not impaired in her ability to understand, remember, and complete simple commands, was moderately to markedly impaired in her ability to understand, remember, and complete complex commands, and was markedly impaired in her ability to maintain persistence and pace in a normal workplace setting. [AR at 280-81.]

970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his or her own medical assessment beyond that demonstrated by the record). This is exactly what the ALJ did here.

Based on the foregoing, the ALJ's reliance on the opinion of the non-examining consultants, that plaintiff could maintain concentration, persistence, and pace for tasks involving "two-step commands involving simple instructions" for four hours at a time, was not supported by any specific or legitimate reason. Accordingly, the ALJ's finding that plaintiff "can maintain attention and concentration to perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements" is not supported by substantial evidence.

Remand is warranted on this issue.

### 3. Failure to Incorporate Dr. Larson's Opinion into the RFC or Hypothetical to the VE

In a closely related issue, plaintiff contends that the ALJ erred because he did not incorporate all of plaintiff's marked concentration, persistence or pace limitations as opined to by Dr. Larson, into his RFC determination or into his hypothetical to the VE. [AR at 15-18.] Defendant argues that the ALJ "properly considered Dr. Larson's opined moderate and marked limitations and even incorporated them into the ultimate RFC determination by limiting Plaintiff to simple, routine, and repetitive tasks." [JS at 19 (citing AR at 16, 280-81).]

A marked limitation, or even, as here [AR at 15], a step two finding of a moderate limitation in the ability to maintain persistence or pace, is not necessarily subsumed within a limitation to simple, routine, and repetitive tasks. See Lee v. Colvin, 80 F. Supp. 3d 1137, 1151 (D. Or. 2015) (a restriction to simple and repetitive tasks does not adequately incorporate *moderate* limitations in concentration, persistence, or pace found at step two). In other unpublished opinions, the Ninth Circuit has held that when an ALJ finds a moderate limitation in concentration, persistence or pace, he must include that limitation in a claimant's RFC. See Lubin v. Comm'r of Soc. Sec. Admin., 507 F. App'x 709, 712 (9th Cir. 2013) (clarifying that limiting a claimant to one to three

9

step tasks did not capture a concentration, persistence or pace deficiency); Williamson v. Comm'r of Soc. Sec., 438 F. App'x 609, 611 (9th Cir. 2011). Similarly, as noted by the Ninth Circuit in Brink v. Comm'r Soc. Sec. Admin., 343 F. App'x 211 (9th Cir. 2009) -- a case relied on by the district court in Lee -- although the ALJ had accepted the claimant's moderate restrictions as to concentration, persistence, and pace, the ALJ failed to address these specific restrictions in the claimant's RFC and in his hypothetical questions, suggesting only a restriction to "simple, repetitive work." Brink, 343 F. App'x at 212. The Ninth Circuit found that this restriction did not adequately capture the claimant's moderate restrictions as to concentration, persistence, or pace because the repetitive assembly-line work addressed by the vocational expert might also require extensive focus and speed. Id.; see also Lubin, 507 F. App'x at 712 (finding the ALJ erred by accepting that the claimant had limitations as to concentration, persistence, or pace and then failing to include such limitations in the RFC and the hypothetical questions to the vocational expert, which only limited the claimant to one- to three-step tasks); Newton v. Chafer, 92 F.3d 688, 695 (8th Cir. 1996) (holding a limitation to simple jobs did not adequately represent a deficiency in concentration, persistence or pace) (cited with approval in Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002)); Craft v. Astrue, 539 F.3d 668, 678 (7th Cir. 2008) (finding that the ALJ failed to provide an "accurate and logical bridge" between the medical testimony regarding mental limitations and the restriction to unskilled work).

Here, the ALJ failed to provide an explanation as to how a restriction to simple, routine, and repetitive tasks accounted for a moderate to marked limitation in concentration, persistence, or pace, especially in light of the ALJ's finding that plaintiff could perform her past relevant work as a fast-foods worker, an occupation which might also require extensive focus and speed as discussed below.

Remand is warranted on this issue. On remand, the ALJ shall incorporate all limitations he determines to be relevant into his hypothetical(s) to the VE and into his RFC determination.

### B. STEP FOUR DETERMINATION

As plaintiff described her past relevant work as a fast-foods worker at Quiznos from 2002

to 2008, she might be assigned to work as a dishwasher, or to take the orders, make the orders, and/or wrap the orders for the customers. [AR at 50-51, 224.] She also noted that the work might involve "making sandwiches, or salads or prepping foods and stuff." [AR at 51, 224.] Based on the testimony of the VE, the ALJ determined that plaintiff is capable of performing her past relevant work as a fast-foods worker as generally and actually performed by plaintiff. [AR at 20.] After the VE testified, the ALJ asked the VE whether his "testimony today [has] been accordant to the DOT [Dictionary of Occupational Titles]," and the VE replied, "[i]t has." [AR at 63.] In his decision, the ALJ stated that the VE's testimony "is consistent with the DOT, and the undersigned accepts it." [AR at 20.]

Plaintiff contends that the requirements for the occupation of fast-foods worker -- which, she observes, is a "very fast-paced job" -- are inconsistent with plaintiff's nonexertional RFC limitation to "simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements." [JS at 20-21 (citing AR at 16).] Defendant counters that "fast-paced production requirements apply to occupations in the engineering and factory context, not restaurants or food service." [JS at 23 (citing to the DOT occupations of Polystyrene-bead Molder ("compares bead density with *production requirements*") (emphasis added)) and Model Maker II ("modify design specifications to conform to *production requirements*")[8] (emphasis added)).] Defendant submits that because the DOT job description for the fast-foods worker occupation "does not involve production requirements, there is no inconsistency between [plaintiff's] RFC and [the] VE testimony." [Id.]

In determining whether appropriate jobs exist for a claimant, or whether the claimant can perform his past relevant work, the VE generally will refer to the DOT. See Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997). SSR 00-4p explicitly requires that the ALJ determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation. See SSR 00-4p (stating that an ALJ must inquire whether a VE's

---

[8] It appears that defendant may have searched the DOT for the term "production requirements," which results in these, as well as other similar occupations, but which provide no illumination on the ALJ's intended meaning.

11

testimony regarding "the requirements of a job or occupation" conflicts with the DOT). The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a VE's testimony, particularly in cases where the expert's testimony conflicts with the DOT. In making disability determinations, the ALJ may rely on VE testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. Light, 119 F.3d at 793; Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); Massachi, 486 F.3d at 1153. Although evidence provided by a VE "generally should be consistent" with the DOT, "[n]either the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." SSR 00-4p. Thus, the ALJ must first determine whether a conflict exists and, if it does, he must then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. Id.

Only after determining whether the VE has deviated from the DOT, and whether any deviation is reasonable, can an ALJ properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54. Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. See Light, 119 F.3d at 1435 n.7 (ALJ provided sufficient support for deviation by noting that the VE described characteristics and requirements of jobs in the local area consistent with claimant's RFC); Terry v. Sullivan, 903 F.2d 1273, 1279 (9th Cir. 1990) (ALJ may infer support for deviation where VE's understanding of applicable legal standards is clear from context). Here, the ALJ did not seek an explanation as to the potential conflict, and the VE did not provide any explanation.

The DOT description for the fast-foods worker states as follows:

> Serves customer of fast food restaurant: Requests customer order and depresses keys of multicounting machine to simultaneously record order and compute bill. Selects requested food items from serving or storage areas and assembles items on serving tray or in takeout bag. Notifies kitchen personnel of shortages or special orders. Serves cold drinks, using drink-dispensing machine, or frozen milk drinks or desserts, using milkshake or frozen custard machine. Makes and serves hot beverages, using automatic water heater or coffeemaker. Presses lids onto beverages and places beverages on serving tray or in takeout container. Receives payment. May cook or apportion french fries or perform other minor duties to prepare food, serve customers, or maintain orderly eating or serving areas.

DOT No. 311.472-010. The DOT describes itself, however, as "not comprehensive," and providing only occupational information on "jobs as they have been found to occur, but [the descriptions] may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." Johnson, 60 F.3d at 1435 (quoting DOT at xiii); see also Barker v. Shalala, 40 F.3d 789, 795 (9th Cir. 1994) (noting that the DOT provides that "[a]n occupation found to have certain characteristics in job situations observed by the employment service does not necessarily preclude the same occupation from having different characteristics in other job situations"); see Segovia v. Astrue, 226 F. App'x 801, 804 (10 Cir. 2007) (unpublished) ("'[A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every situation'") (citation omitted). Thus, while the DOT description for the fast-foods worker occupation does not specifically include the terms "production requirements" or "fast-paced," that omission does not necessarily mean that such an occupation is an "environment free of fast-paced production requirements."

Indeed, "fast food" is just that -- food that is quickly ordered, prepared, and served to the customer (at plaintiff's prior workplace in an assembly-line-type fashion) and each menu item is presumably assembled according to company-mandated specifications or requirements as to standard portion sizes or weights for the ingredients to be included with that item. While the terms "fast-paced" and "production requirements," which the ALJ did not define for purposes of his hypothetical to the VE, are not specifically included in the DOT definition for this position, it may reasonably be inferred that such requirements are nevertheless inherent in the fast-foods worker position as plaintiff actually performed it, or as generally performed. Thus, plaintiff's past relevant work as a fast-foods worker as identified by the VE at least potentially conflicts with plaintiff's limitation to "simple, routine, and repetitive tasks[9] in a work environment free of fast-paced

---

[9] Given the breadth of the menu choices at a restaurant such as Quiznos, preparing each customer's order to exacting specifications (whether the customer's or the company's) may not necessarily be "simple, routine, and repetitive" work. Additionally, the fast-foods worker position, which requires reasoning level 2 skills, might require the ability to understand, remember, and carry out something more than the ALJ's additional undefined RFC limitation to "simple job instructions." [AR at 16.] This is especially true given the ALJ's related finding that Dr. Larson's
(continued...)

production requirements." At a minimum, therefore, the ambiguity in the term "fast-paced production requirements," especially as it relates to the position of "*fast-foods* worker," creates a *potential* conflict between the VE's testimony about plaintiff's ability to perform her past relevant work as a fast-foods worker, and the implicit as well as explicit requirements for that position either as actually or generally performed. An explanation for that conflict is necessary.

Absent a determination that there was a reasonable explanation for the potential conflict, or evidence in the record that provided a basis for relying on the VE's conclusions rather than on the DOT -- and defendant has pointed to no persuasive evidence in the record or otherwise to explain this potential conflict -- an ALJ cannot properly rely on the VE's testimony as substantial evidence to support a disability determination. Massachi, 486 F.3d at 1152-54; SSR 00-4p. Here, the ALJ relied on VE testimony regarding plaintiff's ability to perform a position with requirements that potentially conflicted with her RFC limitation, and the ALJ was therefore required to explain the conflict by making either specific factual findings or drawing inferences from the context of the VE's testimony. See Light, 119 F.3d at 793. He did not do so. Instead, the record contains only the VE's conclusion that plaintiff can perform work as a "fast-foods worker" despite an RFC limiting her to "simple, routine, or repetitive tasks in a work environment free of fast-paced production requirements," and to work involving "simple job instructions," and the ALJ's determination that the VE's testimony was consistent with the DOT. "Where an ALJ fails to obtain an explanation for and resolve an apparent conflict -- even where the VE did not identify the conflict -- the ALJ errs." Richardson v. Astrue, 2012 WL 1425130, at *5 (C.D. Cal. Apr. 25, 2012). Remand is required to obtain further VE testimony to resolve the potential conflict between

---

[9](...continued)
opinion regarding plaintiff's inability "to remember, understand, or carry out *detailed* or complex job instructions" was supported by Dr. Larson's diagnostic tests [AR at 18-19], and the ALJ limited plaintiff to work involving only "simple job instructions." See, e.g., Rounds, 807 F.3d at 1002-04 (a limitation to one and two step tasks is inconsistent with jobs requiring level two reasoning, which requires the worker to apply "commonsense understanding to carry out *detailed* but uninvolved written or oral instructions"). The ALJ on remand shall determine whether there is a reasonable explanation for these potential conflicts to justify relying on the VE's testimony. Id. at 1004.

plaintiff's RFC and her ability to perform her past relevant work as a fast-foods worker. Massachi, 486 F.3d at 1155.

Remand is warranted on this issue.

C. **LISTING 12.05C**

Listing 12.05C provides as follows:

> *Intellectual disability:* Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. [¶] The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

In finding that plaintiff did not meet the criteria of Listing 12.05C, the ALJ stated the following:

> Finally, the "paragraph C" criteria of Listing 12.05 are not met because [plaintiff] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Although the consultative examiner assessed a full scale IQ score of 64 . . . [plaintiff] suffers from no severe physical impairments. Furthermore, her other mental impairments impose no additional work-related limitations distinct from her borderline intellectual disability impairment.

[AR at 16.] Thus, the only question under Listing 12.05C is whether plaintiff's other mental impairments impose additional and significant work-related limitations.

Plaintiff contends that she qualifies for benefits because she meets all three prongs of Listing 12.05C. [JS at 8-13.] She argues that her marked limitation in the ability to maintain persistence and pace in a normal workplace setting, "impos[es] additional and significant work-related limitation of function." [JS at 10.] In addition to plaintiff's borderline intellectual functioning, the ALJ also found that plaintiff suffers from the other mental impairments of a major depressive disorder with psychotic features, a learning disorder, and a mood disorder, any of which, singly or in combination, might impose additional and significant work-related limitation(s).

Because the matter is being remanded to reconsider the record evidence regarding Dr.

15

Larson's opinion that plaintiff has a marked limitation in the ability to maintain persistence and pace, the ALJ on remand shall also reassess whether plaintiff's other mental impairments impose additional and significant work-related limitation for purposes of meeting or equaling Listing 12.05C.

## VI.
## REMAND FOR FURTHER PROCEEDINGS

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007); Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ gave greater weight to the opinions of the non-examining physicians, and failed to provide specific and legitimate reasons for discounting the opinions of consultative examiner Dr. Larson, the ALJ on remand shall reassess the medical evidence of record. Given the amount of time that has elapsed since Dr. Larson's 2010 consultative examination,[10] the ALJ on remand shall either attempt to obtain additional information from

---

[10] The ALJ did not discount Dr. Larson's opinion based on the fact that his examination predated the alleged onset date. At least as to IQ scores, the Administration considers that "the results of IQ tests tend to stabilize by the age of 16 . . . [and] IQ tests obtained at age 16 or older should be viewed as a valid indication of . . . current status." See 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.00D(10). Other testing conducted by Dr. Larson, however, including the mental status examination, might be considered "stale." See Carmickle, 533 F.3d at 1165 (citation (continued...)

plaintiff's treating sources, or order a consultative mental examination(s), with the appropriate examiner(s) being provided with all of plaintiff's medical records, including Dr. Larson's 2010 report. In assessing the medical opinion evidence, the ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any portion of the opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one source's opinion over any of the others. Second, the ALJ shall reconsider whether plaintiff's other mental impairments impose additional and significant work-related limitations for purposes of meeting or equaling the criteria of Listing 12.05C. Finally, the ALJ shall reconsider all of plaintiff's limitations in making the RFC determination and determine at step four, with the assistance of a VE if necessary, whether plaintiff is capable of performing her past relevant work as a fast-foods worker as actually or generally performed.[11] If she is not so capable, then the ALJ should proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform. The ALJ on remand shall determine whether the VE's testimony deviates from the DOT, and whether there is a reasonable explanation for any deviation.

## VII.
## CONCLUSION

IT IS HEREBY ORDERED that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the

---

[10](...continued) omitted) ("[m]edical opinions that predate the alleged onset of disability are of limited relevance")); but see SSR 83-20 (medical records that predate the onset date can be relevant, particularly in the case of progressive impairments).

[11] Nothing in this decision is intended to disrupt the ALJ's finding that plaintiff at best is able to understand, remember, and carry out simple job instructions, but is unable to perform work that would require directing others, abstract thought, or planning; or that she is limited to simple, routine, and repetitive tasks. [See AR at 16.]

Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November 2, 2016

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE